

ORDERED in the Southern District of Florida on _____ AUG 1 6 2007



_____
A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

AS MANAGEMENT SERVICES, INC.,                    Case No. 05-13025-BKC-AJC

               Debtor.                                        Chapter 7
_____/

MICHAEL MANN, MOSES MOORE,
and ALAN L. GOLDBERG, Chapter 7 Trustee
of the Bankruptcy Estate of AS Management
Services, Inc.,

               Plaintiffs,

v.                                                Adv. Proc. No.: 05-1453-BKC-AJC-A

KENDALL PROPERTIES & INVESTMENTS,
LLC, KENDALL PROPERTIES, INC., GILLIS
INVESTMENTS, LTD., BLACKWATER
PARTNERS, LTD., and WILLIAM MURPHY

               Defendants.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**THIS MATTER** came before the Court for hearing upon: (1) the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendant Kendall Properties & Investments, LLC [C.P. #43] (the "Motion to Dismiss), and (2) Plaintiffs' Memorandum of Law in Opposition to Defendant, Kendall Properties & Investments' Motion to Dismiss Plaintiffs' Second Amended Complaint [C.P. #52] ("Plaintiffs' Opposition"). The Court having reviewed the file and the parties' submissions and heard argument of counsel, and being otherwise fully advised in the premises, for the reasons set forth in detail below, the Court grants in part and denies in part the Motion to Dismiss.

**I.    BACKGROUND**

The Second Amended Complaint ("Complaint") alleges claims for: fraud in the inducement (Count I); breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), and tortious interference with prospective economic advantage (Count IV).

Michael Mann ("Mann") and Moses Moore ("Moore") purchased the rights of Alan L. Goldberg, Chapter 7 Trustee of the Bankruptcy Estate of AS Management Services, Inc. ("Goldberg" or "Trustee"), who inherited, via 11 U.S.C. § 541(a)(1), the rights of AS Management, Inc., the Debtor, which purchased the rights of LPS Acquisition Corp. ("LPS"), d/b/a/ Agro Soils, from an assignee for the benefit of creditors of LPS.

AS Management asserts that its own rights were impinged by separate representations made by Defendant, Kendall Properties & Investments, LLC, ("KPI"), at about the time AS Management purchased LPS's rights from the state court assignee. This is the gravamen of Count I. In addition, Mann and Moore asserted in the Complaint that their own personal rights were impinged by the same representations that were allegedly made to AS Management.

2

Thereafter, on April 13, 2007, while this case was pending and this matter under advisement, Mann and Moore filed *Michael Mann and Moses Moore's Notice of Voluntary Dismissal Without Prejudice of Their Claims*. The notice states Mann and Moore are Plaintiffs in Count I of the Complaint but they "no longer wish to be parties to this action as a result of which, they hereby withdraw themselves as Party Plaintiffs...."

The factual allegations of the Complaint are summarized as follows:

LPS, as lessee, and KPI, as lessor, entered into a warehouse lease ("Lease") of certain real estate located at 5800 Krome Avenue in Miami-Dade County (the "Premises") on December 18, 1998. The Lease included certain representations made by KPI regarding zoning and the possibility of closer access to railroad services. Because these alleged representations purportedly proved false, KPI allegedly breached its contract with LPS.

In 2003, LPS was an assignor and Lew Freeman was the assignee, in an assignment for the benefit of creditors action filed by LPS in the Miami-Dade Circuit Court ("Assignment Action"). The Debtor acquired all of the tangible and intangible property of LPS, including LPS's leasehold interest in the Premises memorialized by the Lease, and also, allegedly, all of LPS's causes of action, by taking an assignment of these property rights from LPS's assignee for the benefit of creditors, Lew Freeman. The Complaint alleges that KPI was a party to the Assignment Action and had specific knowledge that the Debtor would assume LPS's obligations under the Lease, and, in essence, agreed to the assignment.

According to the Complaint, KPI knew that the Debtor was contemplating purchasing the LPS assets from Mr. Freeman and did not warn the Debtor in advance that the zoning was not appropriate for the activities to which the Debtor intended to put the Premises and that KPI intended

3

to terminate the Lease.

In March, 2004, Plaintiffs allege that KPI falsely told the Debtor's principals that the Property was in compliance with zoning requirements.

The Lease is attached to the Complaint as an Exhibit "A", and in its motion to dismiss, KPI relies on various provisions therein, including paragraphs 3, 7A and 19A and B, to support dismissal.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard Pursuant to Rule 12(b)(6)

In ruling on a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all well-pleaded facts alleged by the plaintiff are accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 (1957). "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (*en banc*). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (internal quotation marks and citation omitted). See also *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true..."); *Robinson v. Jewish Ctr. Towers, Inc.*, 993 F. Supp. 1475, 1476 (M.D. Fla. 1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual

conclusions."); *Cummings v. Palm Beach County*, 642 F. Supp. 248, 249-50 (S.D. Fla. 1986) (vague and conclusory complaint failed to state a *factual* basis for claims of race and age discrimination required to give defendant notice necessary to prepare defense).

When a copy of a written instrument is made as an exhibit to a complaint, it becomes part of the complaint for all purposes. *See* Fed. R. Civ. P. 10(c), incorporated into bankruptcy jurisprudence by Fed. R. Bankr. P. 7010; *Landmark Tower Assocs. v. First Nat. Bank of Chicago*, 439 F. Supp. 195, 197-98 (S.D. Fla. 1977). Moreover, when the exhibits negate or contradict an allegation made in the body of the complaint, the assertions in the exhibits control. *U.S. ex rel Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004); *Reisner v. Stoller*, 51 F. Supp. 2d 430, 440 (S.D.N.Y. 1999).

### B.     The Motion to Dismiss.

KPI moves to dismiss the Complaint on multiple grounds. KPI asserts, *inter alia*, that:

1.     Plaintiff Goldberg lacks standing to sue;

2.     Mann and Moore lack standing to sue;

3.     AS Management never acquired causes of action from LPS's assignee for the benefit of creditors;

4.     the fraud claim asserted in Count I is barred by the 4-year statute of limitations, Fla. Stat. § 95.11(3)(j);

5.     the fraud claim asserted in Count I is barred by the economic loss doctrine;

6.     the breach of contract claim asserted in Count II is barred by the 5-year statute of limitations of Fla. Stat. 95.11(2)(b);

7.     the breach of contract claim asserted in Count II fails to state a claim because the

Complaint concedes that LPS assumed all zoning risks;

8. the breach of the implied covenant of good faith and fair dealing claim asserted in Count III fails because the count fails to allege how the implied duties relate to the performance of express terms of the Lease and fails to allege the breach of any express terms of the Lease; and

9. the tortious interference claim asserted in Count IV fails because it merely alleges tortious interference with a business's relationship to the community at large.

### C. Plaintiff Goldberg Has Standing to Sue

KPI's first argument for dismissal is that Plaintiff Goldberg lacks standing to sue. KPI argues that Plaintiff Goldberg lacks standing to sue in his name and any cause of action alleged by him should be dismissed because whatever rights he acquired by operation of law when the Debtor filed bankruptcy were sold to Mann and Moore pursuant to this Court's February 28, 2006 *Order Authorizing the Sale of Certain Litigation Rights to Michael Mann and Moses Moore Free and Clear of Liens, Claims and Encumbrances* (the "Order," Exhibit C to Complaint).

Standing "properly is the basis to dismiss the complaint if it is found to be lacking." *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990) (dismissing bankruptcy trustee's claims for lack of standing). However, the constitutional requirements for standing are satisfied by minimal allegations of facts which, if true, would establish the following: (1) the plaintiff suffered an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560 (1962); *see also E.F. Hutton*, 901 F.2d at 984.

The Court does not believe the Trustee's assignment of claims to Mann and Moore divested him of standing. While it is true that "once an unqualified assignment is made, all interests and

6

rights of the assignor are transferred to the assignee," 6 Am. Jur.2d *Assignments* §155 (1999), that is not the circumstance that occurred in this case. The Trustee's assignment of claims to Mann and Moore was not unqualified. The Order specifically maintains that Goldberg will be a Plaintiff, albeit a nominal one, to preserve the viability of the claims purchased by Mann and Moore, and further provides for payment to the estate of 10% of any recovery in this lawsuit. The Order specifically states:

> CC. However, Mann/Moore raised its overbid to include the following:
> * * *
> (iv) Payment to the estate of 10% of any recovery in the Lawsuit and/or the Purchased Assets
>
> MM. Finally, the Sale of the Purchased Assets to Mann/Moore contemplates that the Lawsuit and any other litigation claims against KPI regarding the Lease and the Property shall be pursued in the name of the Trustee so as to preserve any claims otherwise avoidable by applicable law.
>
> 12. Subject to payment of the consideration due herein, the Sale of the Purchased Assets shall be a legal, valid, and effective transfer of the Purchased Assets and shall vest Mann/Moore with all of the Trustee's rights and interest in the Purchased Assets, but the Lawsuit shall remain in the name of the Trustee to preserve the viability of the Purchased Assets.

Inasmuch as the Order expressly provided that the Lawsuit would remain in the name of Goldberg, as well as the fact that the Debtor has a pecuniary interest in the outcome of the lawsuit, Goldberg has proper standing in this matter and the Motion to Dismiss on the basis of the Trustee's standing is DENIED.

### D. Mann and Moore Lack Standing to Sue Individually and as Investors

KPI asserts that Mann and Moore lack standing to sue as investors in the Debtor. The Court agrees. A stockholder lacks standing to recover individually for injuries done to his corporation. *Hill v. Brady*, 737 So.2d 1243, 1244 (Fla. 5th DCA 1999) (shareholder had no

7

right to bring individual action when alleged injury was directly tied to alleged corporate losses); *Lincoln Oldsmobile, Inc. v. Branch*, 574 So.2d 1111, 1114 (Fla. 2d DCA 1990) (rule applies "even where the individual is the sole stockholder of the corporation") (citing *Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir.1968) (only a corporation may sue for its own losses even "in cases where the individual is the sole stockholder")). Accordingly, the Motion to Dismiss on the basis of Mann and Moore's standing as investors is GRANTED.

Mann and Moore also lack standing to sue for their own personal losses; however, their notice of voluntary dismissal of their claims (in Count I) makes this issue moot. The notice of voluntary dismissal effectively dismisses the individual claims for relief by Mann and Moore for fraud in the inducement.

Notwithstanding the foregoing, Mann and Moore do have a 90% interest in this action, as well as an obligation to fund the Lawsuit. Although the sales documents may have been the product of inartful draftsmanship, in the end they establish that the Trustee, Mann and Moore all have an interest in this proceeding.

### E. AS Management Acquired Causes of Action From LPS's Assignee for The Benefit of Creditors

KPI also argues that AS Management never acquired the causes of action from LPS's assignee for the benefit of creditors, and accordingly, Counts I through IV should be dismissed. The Court disagrees.

Before it filed its voluntary petition for relief, the Debtor (AS Management) purchased the right, title and interest in the instant claims (and all other assets) from the assignee in the Assignment Action filed by LPS in 2003. Thereafter, these claims devolved

8

upon the Trustee by operation of law, 11 U.S.C. § 541(a). Mann and Moore then purchased the claims stated in the Complaint from the Trustee. KPI asserts that, to the extent al of the counts of the Complaint are predicated upon the rights (if any) of LPS to sue KPI, those rights still reside in Mr. Freeman, and AS Management never acquired the instant causes of action from LPS's assignee for the benefit of creditors.

KPI relies on *Champaign Nat'l Bank v. SOS Indus., Inc.*, 815 So.2d 725 (Fla. 5th DCA 2002) to support its position. However, KPI's reliance is misplaced. In *Champaign*, assignee, Michael Moecker, tried to assign the assignor's litigation claims to a group of creditors of the assignor. *Id.* The appellate court determined that a secondary assignment of an insolvent corporation's assets to a third party who did not represent all creditors was not permissible under the law. Such a secondary assignment impermissibly granted preference to certain creditors. *Id.* at 727.

*Champaign* is distinguishable from the instant case in that the purchase by AS Management was not an impermissible preference to certain creditors of the assignor LPS. The Debtor acquired the assets pursuant to an Asset and Purchase Agreement. The Debtor acquired the Assignee's right, title and interest in all of the former assets of LPS, with the State Court approving the sale free and clear of liens. This Court believes the transfer is valid and enforceable and rejects KPI's suggestion that it would seem AS Managment's only redress would be to claim a refund in whole or in part from the state court assignee. Accordingly, the Motion to Dismiss on the grounds that the assignment was invalid or ineffective is DENIED.

F. **Statute of Limitations Does Not Bar Fraud-Based Claim**

KPI further asserts that the statute of limitations has expired as to the fraud based claim. "[A] motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint, not, as a general rule, the vulnerability of an otherwise sufficient claim to an affirmative defense." *In re Simpson,* 334 B.R. 298, 303 (Bankr. D.Mass. 2005). An affirmative defense may be adjudicated on a motion to dismiss only if (i) "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice" and (ii) "the facts so gleaned must conclusively establish the affirmative defense." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

The Second Amended Complaint does not conclusively establish the affirmative defense of statute of limitations. This is not because the Complaint is sufficiently pled, but rather the Complaint fails to affirmatively and particularly plead, *inter alia*, the date of discovery of the alleged fraud. *See LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1107, n.5 (6th Cir. 1995) (on a motion to dismiss the court rejected plaintiff's bare allegation that they were unaware of the events underlying the suit: "If a claimant were simply allowed to allege, unchallenged, any date as the time at which the limitations period began to run, courts would be unable to dismiss claims that were, from the record, obviously time-barred."). Accordingly, the Motion to Dismiss with respect to the issue of the statute of limitations on the fraud-based claim is GRANTED, and the Complaint is dismissed with leave to amend to particularly plead when the fraud was discovered.

G.    **Fraud Claim Is Not Barred by the Economic Loss Doctrine**

KPI argues that LPS's fraud in the inducement claim is barred by the Economic Loss Doctrine. The Court disagrees. It is well settled Florida law that the Economic Loss Rule does not bar actions based upon fraud in the inducement. *HTP, Ltd. v. Lineas Aereas Costarricenses*, 685 So.2d 1238, 1239 (Fla. 1996). The Second Amended Complaint properly pleads the elements for fraudulent inducement, *see Metler, Inc. v. Ellen Tracy, Inc.* 648 So.2d 253 (Fla. 1994), therefore the Economic Loss Rule does not bar Plaintiff's cause of action. Contrary to KPI's assertion that the instant fraud in the inducement claim pertains to the performance of the terms of the Lease, the alleged injury is not one which flows from the failure to perform the heart of the agreement, and it is, therefore, not barred. The Motion to Dismiss the fraud claim based upon the Economic Loss Doctrine is DENIED.

H.    **The Breach of Contract Claim Is Not Barred by Statute of Limitations**

KPI asserts that the breach of contract claim is barred by the 5-year statute of limitations, as a cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of contract. *State Farm Mutual Automobile Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996). As previously stated herein, "a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the allegations in the complaint, not, as a general rule, the vulnerability of an otherwise sufficient claim to an affirmative defense." *Simpson*, 334 B.R. at 303. An affirmative defense may be adjudicated on a motion to dismiss only if (i) "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice"

11

and (ii) "the facts so gleaned must conclusively establish the affirmative defense." *Colonial Mortgage Bankers*, 324 F.3d at 16.

The Complaint does not establish the statute of limitations has expired. Although KPI claims that the statute of limitations in this action commenced to run in 1998, when the parties entered into the Lease Agreement, the Plaintiff asserts that, pursuant to Fla. Stat. §95.031, the statute of limitations runs from the time the cause of action accrues, and a cause of action accrues when the "last element constituting the cause of action occurs."

According to Plaintiffs' allegations, it was not until March 14, 2005, that Mann was advised by Miami-Dade County that the business operating at the Subject Property would be required to cease its operation in the event that rock mining and cement manufacturing at the site were to cease. At the pleading stage, Plaintiffs have sufficiently alleged a cause of action. KPI may affirmatively raise the statute of limitations in defense to the Complaint, but the Motion to Dismiss with respect to this issue is DENIED.

## I.     LPS Does Not Appear to Have Assumed All Risks of Zoning

KPI asserts that the breach of contract claim asserted in Count II fails to state a claim because the Complaint concedes that LPS assumed all zoning risks. KPI relies on Paragraph 19.B of the Lease, attached to the Complaint, to support its position. Exhibit A provides: "LESSEE shall be solely responsible for obtaining, at its sole cost and expense, all approvals, permits and licenses which are required to operate on the Premises." Thus, notwithstanding assertions in the Complaint to the effect that KPI misled LPS with respect to the zoning of the Property, KPI argues that the risks of inconvenient zoning,

12

after lengthy negotiations, was assumed by the tenant, LPS.

However, Paragraph 3 of that very same Lease provides that, "Notwithstanding the foregoing, LESSOR represents and warrants that it knows of no environmental or zoning law, ordinance, restriction or condition which would prohibit LESSEE'S use of the Property for the purposes defined in Section 7 below." The Plaintiff claims that at the time KPI entered into the Lease with the Debtor's predecessor in interest, KPI was aware of that the representations in the Lease were false. Accordingly, the Court finds that the Lease does not provide grounds to dismiss at the pleading stage and the Motion to Dismiss is therefore DENIED with respect to this issue.

### J.     Count III States a Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

KPI moves to dismiss Count III for breach of the implied covenant of good faith and fair dealing on the basis the Complaint fails to allege conduct on the part of KPI that Plaintiffs claim constitutes a breach of the implied covenant of good faith and fair dealing. KPI argues that the Plaintiffs have failed to allege in that count how the implied duties relate to the performance of express terms of the Lease, and have failed to allege the breach of any express terms of the Lease. The Court disagrees with KPI's assessment of the allegations on this count. A review of the Complaint indicates Plaintiffs have sufficiently pled a claim for a breach of the implied covenant of good faith and fair dealing. Accordingly, the Motion to Dismiss Count III is DENIED.

### K.     Count IV Fails to State a Cause of Action for Tortious Interference.

Finally, KPI asserts that Count IV should be dismissed because it fails to allege a claim for tortious interference. The Court agrees. Without specificity, Plaintiffs allege

that Defendants tortiously interfered with the Debtor's and its predecessor-in-interest's existing and prospective business relationships. Nowhere, however, do the Plaintiffs identify the purported and prospective business relationships with which Defendants allegedly interfered. On the contrary, the Plaintiffs allege tortious interference with a business relationship to the community at large. Specifically, the Plaintiffs allege that "The Debtor's predecessor in interest had a successful business relationship in the horticultural community of Southern Florida and intended to expand its operations and relationships, of which KPI and its partners were aware." (Complaint, ¶ 98.)

In Florida, no cause of action exists for tortious interference with a business's relationship to the community at large. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So.2d 812, 815 (Fla. 1994); *North Am. Van Lines, Inc. v. Ferguson Transp., Inc.*, 639 So.2d 32, 33 (Fla. 4th DCA 1994), *aff'd*, 687 So.2d 821 (Fla. 1996) ("The business relationship must be with an identifiable person and not with the public at large."); *Southern Alliance Corp. v. Winter Haven*, 505 So.2d 489, 496 (Fla. 2d DCA 1987).

As the Florida Supreme Court has stated, "[a]s a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen*, 647 So.2d at 815. Loss of future customers is not sufficient to state a claim. The tort of unjustified interference with a business relationship requires the existence of a present relationship, not prospective relationships that one hopes to have in the future. *Beacon Property Management, Inc. v. PNR, Inc.*, 785 So.2d 564 (Fla. 4th DCA 2001), *overruled in non-relevant part*, 842 So.2d

773 (Fla. 2003) (the plaintiffs' "prospect of having future customers" is insufficient to establish the requisite business relationship).

The Plaintiffs' claim fails for the same reasons as stated in *Sarkis v. Pafford Oil Co., Inc.*, 697 So.2d 524 (Fla. 1st DCA 1997):

> The cause of action cannot be established by proof that the defendant interfered with a relationship between the plaintiff and the public at large, yet that is precisely the basis of the claim asserted in this case. The plaintiffs alleged that the conduct in question resulted in a general loss of business, but even if that could be proven, it would not amount to a tortious interference with a business relationship as defined in *Ethan Allen* and *Ferguson*. Because the interference alleged here is not specific, this claim must fail.

Accordingly, the Motion to Dismiss the tortious interference claim is GRANTED, and the Complaint is dismissed with leave to amend to identify the purported and prospective business relationships with which Defendants interfered.

### III.   CONCLUSION

Based upon the foregoing, the Court **GRANTS in part and DENIES in part** the Motion to Dismiss Plaintiffs' Second Amended Complaint. With respect to the dismissal of certain causes of action, as more specifically set forth herein, the Plaintiffs shall have 20 days within which to file an amended Complaint in conformity with this Order.

### # # #

Copy furnished to:

Arthur J. Spector, Esq.
Howard DuBosar, Esq.

*(Arthur J. Spector, Esq. is directed to mail a conformed copy of this Order to all interested parties immediately upon receipt of this Order and shall file a certificate of service with the Clerk of the Court.)*