ORDERED in the Southern District of Florida on MAY 0 4 2009



A. Jay Cristol, Chief Judge Emeritus
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                              Case No. 05-13025-BKC-AJC
                                                    Chapter 7
AS MANAGEMENT SERVICES, INC.,

              Debtor.
_____/
ALAN L. GOLDBERG, Chapter 7 Trustee          Adv. Proc. No. 05-1453-BKC-AJC-A
of the Bankruptcy Estate of AS Management
Services, Inc.,

              Plaintiffs,

v.

KENDALL PROPERTIES & INVESTMENTS,
KENDALL PROPERTIES, INC., GILLIS
INVESTMENTS, LTD., BLACKWATER
PARTNERS, LTD., and WILLIAM MURPHY,

              Defendants.
_____/

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court for hearing upon Defendants, KENDALL PROPERTIES & INVESTMENTS, KENDALL PROPERTIES, INC., GILLIS INVESTMENTS, LTD., BLACKWATER PARTNERS, LTD., and WILLIAM MURPHY's *Motion for Summary Judgment* (the "Motion") [C.P. # 172] and Plaintiff, ALAN L. GOLDBERG's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment (the "Opposition") [C.P. #220].[1] The Plaintiff, Alan L. Goldberg, is the trustee in bankruptcy of the above-captioned Debtor, which was a tenant in premises owned by Defendant Kendall Properties & Investments ("KPI"). Although Mr. Goldberg sold the chose in action to certain individuals, this action is brought in the trustee's name as that, and the agreement to share proceeds of damages obtained, were conditions of the sale. *See* Order Authorizing Sale of Certain Litigation Rights to Michael Mann and Moses Moore Free and Clear of Liens, Claims and Encumbrances dated February 28, 2006 (D.E. 146). What remains of the Complaint,[2] after several motions to dismiss were granted in part,[3] are three counts – a count alleging fraudulent inducement to enter into a real estate lease (Count I); a count sounding in breach of contract (the aforesaid lease) (Count II); and a count for breach of the covenant of good faith and fair dealing (Count III).

---

[1] The motion was grounded primarily on statutes of limitations, but the parties attempted to argue the merits as well. The Court denies the Motion on the merits as there remain genuine issues of material facts, as the Court previously stated. Fed.R.Civ.P. 15(b)(2); Fed.R.Bankr.P. 7015; *In re Byers*, 312 B.R. 22, 25 (Bankr. D. Mass. 2004); *In re Lett*, 238 B.R. 167, 188 (Bankr.W.D. Mo. 1999). The Court will consider the Motion solely with respect to the applicable statutes of limitations.

[2] The original Complaint was filed on October 7, 2005 (D.E. 1). An Amended Complaint was filed on May 16, 2006 (D.E. 26). A Second Amended Complaint was filed on July 17, 2006 (D.E. 40). A Third Amended Complaint was filed on September 6, 2007 (D.E. 118). The current Complaint is the Fourth Amended Complaint (D.E. 130) and it was filed on November 5, 2007.

[3] *See* Memorandum Opinion and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Second Amended Complaint (D.E. 108), and Order Granting Defendants' Motion to Dismiss Counts IV, V and VI (D.E. 153) of the Fourth Amended Complaint.

## STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr. P. 7056, summary judgment shall be granted if the record of the case shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has affirmed the vitality of summary judgment as a method for the just, speedy and inexpensive disposition of cases. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Rule 56 is based upon the principle that if there is an absence of a genuine issues of material fact, the Court should, on motion, promptly adjudicate the legal questions which remain. *United States v. Feinstein*, 717 F. Supp. 1552 (S.D. Fla. 1989).

Summary judgment is not viewed as a disfavored procedural shortcut, but, rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. *Celotex, supra*. Thus, once the moving party has established its burden of proof, the party opposing the motion for summary judgment must establish the existence of a genuine issue of material fact. *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat a motion for summary judgment, the non-moving party may not rest upon its pleadings or simply show that there is some doubt as to the facts of the case. *Celotex*, 477 U.S. at 324; Anderson, 477 U.S. at 256-57; *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir. 1991). The non-movant must demonstrate that there is more than a scintilla of evidence in support of his position and that there exists a genuine issue of material fact for trial. *In re E.S. Bankest, L.C.*, 2006 WL 3922112 at *2 (Bankr. S.D. Fla. 2006).

**UNDISPUTED FACTS**

On December 18, 1998, LPS Acquisition Corp., d/b/a Lantana Peat & Soil, as tenant, executed a warehouse lease ("Lease") with KPI, as landlord to property located at 5800 Krome Avenue, Miami, Florida (the "Premises").[4] The provisions of the Lease relevant to this lawsuit are sections 3, 7 and 39, and are stated below:

> (3)  CONDITION OF PREMISES
>
> LESSEE agrees that neither LESSOR nor any agent of LESSOR has made any representation as to the condition of the Premises, that no warranties, express or implied, were made by LESSOR nor any agent of LESSOR, and no promises have been made to change, alter, repair or improve the Premises and all conditions that exist thereon. LESSEE acknowledges that it has fully inspected the Premises and is fully and completely satisfied therewith and accepts the Premises, in an "As Is" condition subject to LESSOR's improvement (if any) per Exhibit "C". Notwithstanding the foregoing, LESSOR represents and warrants that it knows of no environmental or zoning law, ordinance, restriction or condition which would prohibit LESSEE'S use of the Property for the purposes defined in Section 7 below. LESSEE'S receipt of a certificate of occupancy shall constitute satisfaction of all LESSOR'S obligations hereunder with the exception of baseline environmental matters referred to in Section 8 below and Tenant Improvements appearing in Exhibit "C" hereto.
>
> (7)  USES AND OCCUPANCY RESTRICTIONS
>
> A.  LESSEE agrees that LESSEE will not use or suffer or permit any person to use the Premises during the term of the Lease for any use or purpose other than the processing and manufacture of custom blended soils, mixes for distribution and sale to the horticultural industry, golf courses, municipal fields and other users, and a bagging operation (the "permitted uses"), nor shall LESSEE use the Premises for any purpose in violation of the laws of the United States, the State of Florida or the ordinances and regulations of Dade County or the City of Miami, if applicable. Any other use shall require the County or the City of Miami, if applicable. Any other use shall require the prior written

---

[4] Kendall Properties & Investments is a Florida general partnership. The remaining Defendants are partners and members of partners in KPI.

consent of Lessor in its sole discretion, which consent shall not be unreasonable withheld. LESSEE may operate its business twenty-four (24) hours a day, seven (7) days a week, including holidays. Except for the Yelvington operation and muck and sand processing business (Morales Trucking), their successors and/or assignees, presently located at 5800 Krome Avenue, Miami, Florida, LESSEE shall have the exclusive right to engage in the permitted uses, as well as the sale of soil mixes, within the entire property owned by LESSOR within "Section 25" as more particularly depicted in the Aerial Photograph of LESSOR'S property appearing in Exhibit "_____" hereto. In the event zoning laws permit the retail sale of soil mixes and lessor permits same within a portion of "Section 25", LESSEE shall have the first right to lease a portion of "Section 15" from LESSOR upon the same terms and conditions offered LESSOR by a bona fide third party. LESSOR shall give thirty (30) days advance written notice of its agreement to lease a portion of "Section 25" to a third party whose principal business will be the retail sale and display of soil mixes and related nursery items, including the terms and conditions of such agreement, and LESSEE shall have the right to lease a portion of "Section 25" on the same terms and conditions within said thirty (30) day period, the failure of which shall constitute a waiver of said first right of refusal.

Provided it first obtains all necessary regulatory permits, if any, LESSEE may store fertilizers, solvents, oil, fuel, hydraulic fluids or any other chemical, relating to the operation of LESSEE'S business. LESSEE however, agrees that it will not allow the storing, processing disposal of hazardous, biomedical, biohazardous, infectious, explosive or biochemical substances; as such conduct would constitute a violation of applicable law, ordinance rule or regulation governing the Premises. LESSEE, as a material part of the consideration to LESSOR, hereby assumes all risk relative to damage to property or injury to persons as a result of the operation of the Premises, to the extent allowable by law.

      B.    LESSEE shall use reasonable efforts to conduct its business in such a manner, both as regards to noise and other nuisances, as will not unreasonably interfere with, obstruct, annoy or disturb any other party in the conduct of its business, or allow the Premises to be used for any immoral or unlawful purpose. LESSOR, however, acknowledges and understands that in the general day to day operations of LESSEE'S business, noise, dust, dirt and odors occur.

### 39. COMPLIANCE WITH DIRECTIVE OF AUTHORITIES

A. LESSEE shall, at LESSEE's own cost and expense, promptly observe and comply with all present and future laws, ordinances, requirements, orders, rules and regulations of all governmental authorities having jurisdiction over the Premises or any part thereof, whether the same are in force at the Commencement Date or may in the future be passed, enacted or directed, and LESSEE shall pay all costs, expenses and obligations that my in any manner arise out of or be imposed because of the failure of LESSEE to comply with the covenants of this Paragraph 39. LESSEE shall promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State, County and City governments and any and all of their departments and bureaus applicable to the Premises unless LESSEE elects to contest same, and shall also promptly comply with and execute all rules, orders and regulations of the Southeastern Underwriters Association, or other applicable codes, for the prevention of fires, at LESSEE's own cost and expense. LESSEE waives any claim against LESSOR for any expense or damage resulting from compliance with any of the said laws, ordinances, requirements, orders, rules and regulations. If LESSEE receives any notice of violation, LESSEE shall give prompt notice thereof to LESSOR. The Judgment of any court, or the admission of LESSEE in any event or proceeding against LESSEE, whether the LESSOR be a party thereto or not, the LESSEE has violated any such laws, ordinances, requirements, orders, rules and regulations in the use of the Premises shall be conclusive of the fact as between LESSOR and LESSEE unless LESSEE is actively contesting or appealing such judgment or admission.

On the same date, LPS and KPI executed a First Addendum to the Lease to grant the tenant the use of office space in addition to the original Premises, at an agreed rental price.

On November 20, 2000, the parties executed a Second Addendum to Warehouse Lease to provide for a loan by the landlord to the tenant of $65,000 to cover the tenant's costs of installation of a control room in the Premises.

On November 21, 2001, the parties executed a Third Addendum to Warehouse Lease, which amended the Second Addendum to provide for the landlord's loan of $150,000 to finish

the installation of the control room and for a guaranty of the loan by one of the investors in the tenant.

All three of the addenda bear this recitation: "All the other terms and conditions of the Lease shall be incorporated in and governed, by this [ ] Addendum, as if such terms and conditions were set forth herein in their entirety; and the provisions of this [ ] Addendum shall govern in the event of a conflict. Except as otherwise provided for in this [ ] Addendum, the terms and conditions of the Lease remain in full force and effect."

LPS operated a soil blending plant at the Premises.

On June 23, 2003, LPS filed an Assignment for the Benefit of Creditors in Miami-Dade Circuit Court. Lewis Freeman was the Assignee. On September 17, 2003, Freeman sold certain of LPS's assets to a new entity, entitled AS Management Services, Inc. (the Debtor in this case). Among the assets purchased were the Warehouse Lease and all of LPS's choses in action. *See* Complaint, ¶¶15, 26 & 46.

Thereafter, AS Management Services, Inc., through its affiliate, AS Distribution, Inc., operated a peat processing plant at the premises.

In 2005, AS Management, itself, went out of business and, on April 14, 2005, filed for relief under Chapter 11 of the Bankruptcy Code. On June 21, 2005, the Court entered an Order Converting Case Under Chapter 11 to Case Under Chapter 7, and the Plaintiff, Alan L. Goldberg was named the trustee.

## ANALYSIS

### A. COUNT I

The Defendants' motion for summary judgment is grounded in the relevant statutes of limitations. With respect to Count I, the Defendants maintain that, if KPI misrepresented the

status of the zoning, it occurred when KPI signed the Lease as landlord. As that date was December 13, 1998, the deadline to file suit for fraud was December 12, 2002 (four years after the representation) per Fla. Stat. 95.11(3)(j).[5]

The Plaintiff counters that the statute of limitations for a fraud is tolled until the fraud is discovered. Fla. Stat. 95.031(2)(a).[6] The Plaintiff argues that the fraud was not discovered until March 14, 2005, when the Plaintiff "came to understand that due to the fraudulent misrepresentations, omissions, and other improper actions by KPI, it is impossible to carry on the business that the Debtor acquired and conduct its planned expansion." Complaint, ¶59. The lawsuit was timely, according to the Plaintiff, because it was filed on October 7, 2005, a mere seven months after the Plaintiff's discovery of the fraud.

Relying on several affidavits and depositions of record, and in particular the affidavit of Mr. Deckinger, the Defendants assert that, years prior to the Debtor's discovery in March 2005, there was knowledge that the Premises were zoned IU-3, which, with respect to the Premises, meant that the property was zoned for use only by a cement manufacturing plant and excavating ancillary to cement manufacturing. Deckinger Affidavit, ¶13. However, in his May 1, 2008 deposition, Mr. Deckinger said that although he knew that the Premises were zoned IU-3 he did not realize at the time that its use was limited to cement manufacturing and rock mining. Defendants counter this argument by citing to a variance that was obtained from Miami-Dade County to operate its soil blending plant. *See* EQCB Board Order #00-19, dated August 3, 2000; *see also* Statement by Alice Robertson, Assistant Director of DERM at the January 22, 2004

---

[5] A legal or equitable action founded on fraud shall be commenced within four years.

[6] "An action founded upon fraud under s. 95.11(3) . . . must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed in s. 95.11(3). . . ."

Miami-Dade County Commission meeting, Page 16, Lines 1-2 ("August 3rd of 2000 Lantana Pete [sic] and Soil was granted a variance for the property."). The Defendants contend that the latest that LPS would have had actual knowledge that a variance was required was the date that it actually received it: August 3, 2000. Defendants argue that because the date the variance was received was more than four years before the date the lawsuit was filed, Count I, seeking damages for fraud in the inducement, is barred by the applicable statute of limitations and is not saved by the delayed discovery statute.

While the Court is favorably impressed with the Defendants' position, as it apparently relies on strong evidence of prior knowledge, questions of fact still exist as to the issue of knowledge precluding entry of summary judgment, not least of which go to the issuance of the variance and any possible modifications or understandings. There also remain questions of fact regarding due diligence, and whether and when LPS or the Debtor knew or should have known of the alleged fraud. At the hearing, the Plaintiff argued these grounds upon which the Defendants rely for summary judgment are new grounds and should not be considered as they are raised for the first time at the hearing, in violation of Rule 56 of the Federal Rules of Civil Procedure. The Court believes that in the interest of due process, and as a result of the remaining issues, summary judgment on Count 1 of the Complaint is premature and not warranted or justified at this juncture. Accordingly, the Motion is DENIED as to Count 1.

## B. COUNT II

The statute of limitations for actions founded upon breach of a contract is five years from when the breach occurs. Fla. Stat. 95.11(2)(b).[7] It is the gravamen of the Plaintiff's entire case that the zoning for the premises did not allow the use for which LPS (at first) and the Debtor

---

[7] A legal or equitable action on a contract, obligation, or liability founded on a written instrument shall be commenced within five years.

(years later) intended to occupy the Premises. The Plaintiff relies on pre-Lease correspondence between Dade County's zoning staff and KPI through its attorneys to prove KPI misrepresented the status of the zoning on the Premises. According to the Plaintiff, the zoning permitted only cement manufacturing and excavating, and did not permit soil blending. Therefore, according to the Plaintiff, the Lease, which promised the tenant that it was permitted according to law to operate a soil blending plant at the premises, was breached by the landlord the moment it was signed.

Five years from December 18, 1998 was December 18, 2003. The lawsuit was filed on October 7, 2005, far outside the bar date. Accordingly, summary judgment for the Defendants is appropriate.

The Plaintiff makes three arguments in opposition. First, it relies on the delayed discovery rule by claiming that LPS did not know of the alleged falseness of the Lease's representation in section 3 as to the status of the zoning. Second, it argues that the breach did not occur until the tenant suffered damages therefrom. Third, it argues that the November 21, 2001 Third Addendum to the Warehouse Lease extended the statute of limitations. These arguments are without merit.

It is the Plaintiff's position that the Lease was breached by virtue of the fact that the zoning on the Premises was not as promised in the Lease. That breach would have occurred at the moment the Lease was signed. Section 95.11, Fla. Stat., establishes a 5-year period of limitations for a legal or equitable action on a contract, obligation, or liability founded on a written instrument. Five years from the inception of the Lease was December 18, 2003. The Plaintiff's lawsuit was filed on October 7, 2005. Accordingly, the statute of limitations has run.

Moreover, the statute of limitations triggered by an injury begins to run when an injury commences or first appears, not when it recurs, and this is so even when such recurrence marks a breach of the same continuing duty owed to a plaintiff by a defendant. *See Armbrister v. Roland International Corp.*, 667 F. Supp. 802, 809 (M.D. Fla. 1987) ("Plaintiffs were injured at the time they entered into their contractual agreements with Defendants. At the date of signing the contracts, Plaintiffs' rights and obligations were fixed, and Plaintiffs became obligated to make the payments at issue."). Therefore, even if the breach continued every day until the demise of the Debtor, the breach, for statute of limitations purposes, is the initial breach on December 18, 1998.

There is no delayed discovery rule in Section 95.11(2)(b) that would toll the statute for actions for breach of contract. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913 (11th Cir. 1999) citing *Federal Ins. Co. v. Southwest Florida Retirement Center, Inc.*, 707 So.2d 1119, 1122 (Fla. 1998) (actions for breach of contract are barred five years after the cause of action accrued regardless of whether the plaintiff knew that it had a claim or the breach had been discovered). The law in Florida is clear that the statute of limitations for breach of contract begins to run when the breach occurs regardless of when it is discovered. *State Farm Mutual Auto Ins. Co. v. Lee*, 678 So.2d 818, 821 (Fla. 1996); *Medical Jet S.A. v. Signature Flight Support-Palm Beach Inc.*, 941 So.2d 575 (Fla. 4th DCA 2006); *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571 (Fla. 4th DCA 2006). Moreover, when a representation upon which a breach is based is contained in a lease, the breach occurs at the time of the execution of the contract. *See The West 90th Owners Corp. v. Schechter*, 137 A.D.2d 456, 458, 525 N.Y.S.2d 33, 35-36 (N.Y.A.D. 1 Dept. 1998) (where vendor's representation as to the term

of restaurant lease was false, when made, breach occurred at the time of execution of contract and for fraud based on contract representations, ran from that time).

Furthermore, Florida law is clear that the statute of limitations for contracts begins to run when the breach occurs even if damages are manifested later. *Medical Jet, supra.* Here, as noted previously, LPS went out of business in 2003. If the property was zoned in such a way that LPS was operating illegally, it must have happened from day one. Therefore, as to LPS' claim, the claim is barred.

Lastly, under Florida law an addendum to a contract will not extend the period of time within which to bring suit if the terms of the addendum do not conflict with the original contract. *Aboujaoude v. Poinciana Development Co. II,* 509 F.Supp.2d 1266, 1273 (S.D. Fla. 2007) citing *Avatar Development Corp. v. De Pani Const., Inc.*, 834 So.2d 873 (Fla. 4th DCA 2002) (there is no new contract which would restart the running of a new limitation period when an addendum is made that co-exists without conflict with the original contract). Here, the Third Addendum involves a loan made by KPI to LPS to finish the installation of a control room. The Addendum does not change any of the Lease's other terms and plainly co-exists with the original contract without any conflict. Consequently, the Third Addendum is not itself a new contract and does not extend the statute of limitations. *See id.*

When AS Management purchased LPS' choses in action, including this breach of contract claim, on September 17, 2003, it had 92 days left on LPS' 5-years statute of limitations to commence action. It failed to do so, so LPS' claim for breach of the contract is time-barred.

AS Management also purchased LPS' rights to the Lease. It thereby stepped into LPS' shoes as the tenant under the Lease. *See State v. Family Bank of Hallandale*, 667 So.2d 257, 259 (Fla. 1st DCA 1995) ("The assignee steps into the shoes of the assignor and is subject to all

equities and defenses that could have been asserted against the assignor had the assignment not been made."); 3A Fla. Jur. 2d *Assignments* § 25 (2008) (an assignee takes the assignment subject to such defenses as the operation of a statute of limitations); *Shreve Land Co. v. J & D Financial Corp.*, 421 So.2d 722, 724 (Fla. 3d DCA 1982) ("The law is well settled that an assignee succeeds to his assignor's rights under the assignment of a contract and takes with it all the burdens to which it is subject in the hands of the assignor."); *Alderman Interior Systems, Inc. v. First National-Heller Factors, Inc.*, 376 So.2d 22, 24 (Fla. 2d DCA 1979) (holding that an assignment gives the assignee no greater rights than those held by the assignor).

If the zoning provisions of the Lease were breached at Lease inception, then AS Management had to file a claim for breach of the Lease within the time allotted to the tenant, by December 18, 2003. Its receipt of an assignment of the Lease does not restart causes of action. *Id.* Moreover, the fact that AS Management discovered the alleged misrepresentation in 2005 is of no meaning. Discovery is not the test. If LPS had not discovered that its use of the Property was illegal in time for it to have brought suit then discovery of this alleged fact years later is irrelevant.

The Plaintiff argues that AS Management did not suffer damages from the illegal zoning until it was denied permits in 2005. While unfortunate for the Plaintiff, the statute of limitations had run before AS Management even began operations at the premises, the fact that AS Management suffered damages years later is irrelevant. Accordingly, summary judgment is granted on Count II.

### C. COUNT III

Count III alleges an action for breach of the implied covenant of good faith and fair dealing. Summary judgment is warranted in favor of the Defendants on this claim as well.

Because there is no specific statute of limitations for this cause of action, the Court holds that the statute of limitations to bring such a claim is four years. *See* Fla. Stat. §95.11(3)(p) (Any action not specifically provided for in these statutes). Applying the 4-year statute of limitations, Count III is time-barred.

Paragraph 92(e) and (f) of the Complaint, which comprise part of Count III, allege that KPI breached the implied covenant of good faith and fair dealing by entering into the Lease that was assumed by the Debtor because the Lease allowed operations that were inconsistent with zoning restrictions on the Property.

The alleged implied contractual duties in the Lease existed as of the date of the Lease, December 18, 1998. Therefore, the statute of limitations on the breach of the implied duty claim began to run on December 18, 1998. The statute of limitations expired four years later, on December 18, 2002. Because the Plaintiff first asserted this claim on October 7, 2005, when the initial Complaint was filed, this claim is time-barred.[8]

For the reasons stated, IT IS

ORDERED AND ADJUDGED that the Defendants' Motion for Summary Judgment (D.E. 172) as to Counts I, II and III of the Complaint is **GRANTED in part and DENIED in part**. The Motion is granted as to Counts II and III and denied as to Count I.

###

Copy furnished to:
Arthur J. Spector, Esq.
Howard Dubosar, Esq.

*(Attorney Spector is directed to serve a conformed copy of this Order upon all interested parties, and to file a Certificate of Service with the Court).*

---

[8] Even if the 5-year statute of limitations under Fla. Stat. §95.11(3)(b) for legal or equitable actions on a contract, obligation, or liability founded on a written instrument is applied to Count III, this claim is time-barred. The statute of limitations expired on December 18, 2003.